Our next case is M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda. M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda. Good morning. May it please the Court. The sole question before the Court is whether, under Rule 4K2 and consistent with due process, a U.S. Court can exercise personal jurisdiction over DAL for M-I's patent infringement claims. The answer is yes, and the reasons are straightforward. DAL transported, installed, and operated equipment on U.S. territory, specifically U.S. flag vessels, that infringed M-I's patents. Indeed, DAL continued to operate the infringing equipment for years. Suppose we conclude, and I find this case kind of procedurally very complicated, but suppose we disagree with both you and the District Court that U.S. flagships are U.S. territory for purposes of the Patent Act. What do we do then? Because at least my reading of our President and Supreme Court President is that that's a merits question, not a jurisdiction question, so we couldn't affirm on an alternative basis. But it would be seemingly futile to send it back if, as a matter of law, a U.S. flagship in international waters is not U.S. territory for the purposes of the Patent Act. I would agree with you, Judge Hughes, that if it's not, it's probably futile to send it back. We could alternatively affirm on the basis of 12b-6, failure to state a claim. You probably could, Judge Hughes. That is, as you have stated, this is sort of the question out of the box, the a priori question, are these U.S. flag vessels U.S. territory? And we contend that under well-established law and precedent, they are U.S. territory. There is a single seminal case the Court is aware of from our briefing, Gardner v. Howe. That's not binding on us, right? That's not binding precedent on us, right? It's not binding precedent other than the fact that it has been recognized for literally since 1865 and as recently by Congress as in the legislative history of the 1990 Inventions in Outer Space Act where Congress recognized the Gardner. Was it questioned in DECA and Ocean Sciences by our predecessor court? It was questioned, but notably, Your Honor, it was never impliedly or expressly overruled. And as this Court's aware, Congress is presumed to legislate with knowledge of judicial rulings. And so when Congress says in 1990, which is after those decisions, that Gardner is law recognizing that you have that. You're talking about the legislative history of the Outer Space Act, right? One person saying that it's law or that a ship is U.S. territory for purposes of patent law, is Congress legislating that? Well, two points in response, Your Honor. Remember that the Gardner case has been extant since 1865 and with Congress being presumed to know about that decision. And that decision squarely addresses this issue and says, for purposes of patent law, U.S. territory includes U.S. flag vessels. Congress is presumably aware of that decision. They've amended the patent law a number of times since then, and they have never said it doesn't apply to U.S. flag vessel. I hear what you're saying. I also would just, how do you respond to the point that the Supreme Court has talked about this doctrine several times since Gardner and has reiterated the fact that it is the idea that it is a U.S. territory is a metaphor, is the language that's used. It's a metaphor for purposes of determining jurisdiction and thinking about jurisdiction, not necessarily something that should require us to say Congress intended U.S. patent laws to extend to U.S. flag vessels. Judge Stahl, I think since the decision that you're talking about, the decisions that you refer to as a metaphor, the U.S. Supreme Court has issued several decisions that are much stronger in terms of saying this is U.S. territory. In other words, the decisions like Cunard versus Mellon that they're citing to in 1923, remember in 1952, the United States Supreme Court issues the Lawrenson case. And the Lawrenson case says in unmistakable language, the law of the flag supersedes the territorial principle, even for purposes of criminal jurisdiction of personnel on a merchant ship, because it is, quote, deemed to be a part of the territory of that sovereignty whose flag it flies. This is a case about choice of law. Lawrenson is talking about choice of law. It's not talking about whether U.S. laws extend to a ship. Do I remember that correctly? I mean, it was, I believe that there was a finding of jurisdiction, and then there was a determination, OK, whose law it flies. Is it Danish law or U.S. law? Right, and it has to do with criminal law. But it also cites, Your Honor, to another case that's worth reviewing, which is the United States versus Flores case, which is, again, post-Cunard, but before Lawrenson. And Lawrenson cites it with approval. That's a case, Your Honor, of a vessel that's in the Belgian Congo, in a river in the Belgian Congo. And the U.S. Supreme Court says, number one, Congress has authority to make laws that have jurisdiction on a U.S. vessel under Article III, Section 2 of the Maritime Power. And it says, indeed, Congress did with regard, in that instance, with regard, again, to a criminal issue. And so I want to come back to your thing on the Inventions in Our Space Act and say another reason why, beyond the legislative history, that matters. Because to the extent that there's some negative, there's a negative inference that the other side would like to draw of saying, well, you know, Congress hasn't explicitly said anything more than it applies to U.S. territory. The Invention in Our Space Act, remember, is very clear in Congress saying that inventions that are on transitory objects in space are going to be protected by U.S. patent law. I agree. I think that might cut both ways, though, against you. Because there was a decision by Congress to expressly have a statute talking about space, but there is no such equivalent for flagged vessels. Well, it might, but for the fact that, you know, the Gardner case has been cited repeatedly since 1865. Congress has clearly been aware of it. And Congress has never legislated to change the patent law to say that territory doesn't apply. The law of the flag doctrine, which says that U.S. flagged vessels are U.S. territory and subject to U.S. law, is well established. One case I'd like to cite the court to that I think is relevant, but let me get to that in a second. There is another. I want to go beyond U.S. case law. So based on this argument, is the converse true, that if there's a flagship of another country stationed in a United States harbor, which is clearly within the United States territory, it is nevertheless immune from patent infringement claims because it flies the flag of a foreign nation? The reverse, I think, might well be true, that what the cases have said in terms of jurisdiction for a foreign flagged vessel in U.S. territory has said that only if something has happened which would affect the peace and dignity if there's some sort of major crime or something. So it might. Is that the Brown versus Duchesne case? That's Brown versus Duchesne, and I think the Vildenhoof case before that. But I did want to raise something quickly. This is not just U.S. law that recognizes law of the flag. This is also treaty law, including treaties that they've cited. For example, the U.N. Convention on Law of the Sea at Article 92 says this. Ships, quote, ships shall sail under the flag of one state only and save in exceptional cases expressly provided for in international treaties or in this convention shall be subject to exclusive jurisdiction on the high seas. Article 6 of the Convention on the High Seas Act says the same thing. So this is customary international law, two different treaties that are echoing what case after case from the U.S. Supreme Court. And I'm talking from Lauritzen versus Larson. So it seems to me that this issue is more of a 12b6 issue. It's a subject matter jurisdiction issue. It does. The reach of U.S. Panama. But this is a personal jurisdiction question that we have before us. Right. And I'd like to get to that issue. I want to make sure I answer all the court's questions on this law of the flag issue. The question here is whether, to what extent does a flag vessel, U.S. flag vessel provide minimum context? Right. Here's our view of that, Your Honor. If it is U.S. territory, then it is U.S. territory for all purposes. You have the benefit of U.S. laws. And it is as though you were acting in a U.S. state or jurisdiction. But still, we're looking at minimum context. Right. You know, if this case involved Alabama, we would be looking at that. No one would argue, well, Alabama's a U.S. state. Right. Right. We'd be arguing, what's the strength of the minimum context? Right. So regardless here, we're looking at what's the strength. Under the facts of this case, what's the strength of the minimum context? Right. And let me get to that, Judge Rayner. First of all, as you've raised, Your Honor, we know that Rule 4k2 was adopted specifically to ensure that there would be a federal forum for federal claims where there aren't sufficient contacts with a specific state. That's why we're here. We're here because we're supposed to be here. We're supposed to be here because when there isn't contact with a U.S. state, but there are contacts with the nation, i.e., something like a U.S. territory here, then there should be jurisdiction. Now, what are the minimum contacts here? Here, the record is uncontroverted, that DAL, as I noted at the beginning, transported, installed, and operated infringing equipment on these U.S. vessels for years, between 2013 and 2015. They continued to do so. They were advised in 2013 of our complaint, and they even got a translated copy of it and knew for two years that we were- The minimum contact cases that I'm familiar with, you're looking to see where the agreement was signed, where did the parties reside, and things of that nature. Here, all you have is a ship. Well- Isn't it your argument that you're talking about specific jurisdiction, right? We are. You're talking about that they actually were on the ship or U.S. territory for purposes of jurisdiction performing the acts that are alleged of infringement. Exactly, Your Honor. They were literally- In some ways, it's an unusual case because sometimes it's someone selling a product or something that goes into a jurisdiction. Here, they are in the jurisdiction operating this equipment that is infringing, and in that regard, it falls directly within the notion of doing business in a U.S. forum, directing activities into a U.S. forum. I think, Judge Raynor, what may go to your point is I think of the court's case, the Synthesis case. The Synthesis case that was decided and involved a Brazilian defendant that this court held could come and was from a U.S. jurisdiction. It wasn't something where they had a contract. If you remember, they would come to trade shows in the United States, and in fact, as this court acknowledged, they weren't even trying to sell to individuals in the United States. They came to a trade show and expressly were saying, we don't have FDA approval. We're not seeking to sell people in the U.S., but what this court said is when you came into the U.S. and when you were appearing in those trade shows, you were taking advantage of the privilege of doing business in the United States. You were directing those activities into the forum. That's precisely what happens here. When they're on U.S. territory. In most cases, it's because the minimum context has effect on the market of that particular forum, that it's located in that particular forum, the consumers, and things of that nature. But here, I'm dubious as to the strength of the minimum context on the U.S. flagship. I understand, Judge. And that being all. Well, here's what I think. And the other side talks about you have to be exploited in the U.S. market. I think that's not quite correct. If we go back to Burger King and International Shoe and the basic principles, the basic principles of minimum context, particularly in this context of specific jurisdiction, is that they are on fair notice that they may be hauled into court in a U.S. forum. It's not about you have to have been exploiting the U.S. market to some degree. It's that you have sufficient contacts, and you've done business enough to know that you may be in a U.S. forum. We cited you to the Intercon case. This is the Oklahoma case. I think it's pages 39 and 40 of our brief. That was out of the Tenth Circuit in Oklahoma. And it was a company that was, initially, accidentally using a web server in Oklahoma. And after they learned that they were accidentally using it, they continued to use it for just a few months, four months in order not to interrupt service to customers. And they went to the court, and they said, well, we weren't, you know, this was not something we intended to do, and we weren't there very long. The Tenth Circuit said, look, that may have been true when you first found out. But when you stayed for another four months, you were taking advantage of doing business in that forum. Now, plainly, they weren't trying to exploit that forum in a commercial way. They were just trying to bridge a customer service gap. Here, this company is making money. They're getting profit from operating for years infringing patents on US territory. You also rely on the T.C. Hartland case, right? We do, Your Honor. I would note that the court is probably aware that the US Supreme Court granted cert last month in that case. However, as this court is also aware, the US Supreme Court takes questions presented, and not necessarily the whole case. The question presented, accepted by the Supreme Court, has to do with the venue issues, not the personal jurisdiction issues. So we would hold that the reasoning in T.C. Hartland applies. I'm running low on time, but I'd like to address your point. The T.C. Hartland case, the Oklahoma case I just mentioned, the Worldtronics case, all of which are covered at pages 37 to 40 in our opening brief, repeatedly reject, repeated rejection of what my colleagues on the other side's argument is, which is that, gee, if a customer asks us to do this, then we haven't really purposely directed activities into the forum. All those cases say that's not true. As you know, Judge Zoll and T.C. Hartland, I believe it was less than 2% of the products, a very minimal amount of products, were going into Delaware. The court said, if you did it, and it doesn't matter that it's not that many, what matters is that by putting those products into Delaware, into that forum, you were aware that you might be hauled into court there. That's the inquiry, not whether you're trying to exploit the market. If you've done enough business, and this court has said, even a single substantial contact is sufficient to establish minimum contacts. Last point I'd like to make before I sit down is remember also the standard here. We only have to make a prima facie case. We just have to make a prima facie case for personal jurisdiction. We think, given the evidence in this case, we clearly have that. OK, thank you. Counselor Vandenberg. Yes, thank you, Your Honor. May it please the court. This case is fundamentally about Brazilian commerce, not United States commerce. The defendant, DAL, is a Brazilian entity that markets pneumatic conveying systems in Brazil. I want to ask you some of the same questions that Judge Hughes referred to earlier. In your brief, you argued that in the alternative, dismissal in this case is proper because US patent law does not extend to a US flagged vessel. Did you, what would be the basis for that? Would that be a 12b6 decision? What would that be? Having gone around several times at the district court level and thought about it, the most reasonable basis to do it would be for failure to state a claim under Rule 12b6. It ultimately goes to the heart of whether or not they have stated a claim. Now, in terms of the question of whether this court can reach that issue, the court doesn't need to. If it affirms the district court on the other personal jurisdiction arguments, it doesn't mean to reach the issue. But if you don't, an appellate court is well accepted, does have the authority to decide an issue for the first time on appeal. It doesn't happen that often, but the court does have the authority. And this case fits exactly the circumstances where courts that do so exercise that discretion. Was there a 12b6 motion filed below? There was originally a 12b6 motion filed. Now, we have a little crosstalk in the brief on this issue. The party that filed the brief was DAI, not DAL, the appellee here. But the district court has already made a ruling on that. And the district court ruled on it, although, again, complicating this unusual case, ruled on it in the second case that MI filed against the DAI. DAI got dismissed from this case. They refiled against DAI. DAI raised it a second time in that case. And the district court has ruled on it. And that goes- What's the status of that case? That case is, MI has actually, as I understand it, withdrawn, dismissed their claim of infringement. And the only thing that's really left to be resolved is an issue of DAI's request for attorney's fees in that case. But getting back to the question of why should this court decide this issue of the ship as territory if it doesn't affirm the lack of personal jurisdiction, first of all, what the courts say when they look at these discretionary issues is, is it a question of law? That is certainly the case here. It is a pure question of law. Secondly, they look to, has the issue, in fact, been fully briefed by the parties? It has been here. It's been fully briefed actually three times, one in one district court case, one in another district court case, and then here again on appeal. And a third factor that actually isn't in the other cases, but makes it even stronger here, is that the district court has, in fact, ruled on the issue. If you don't decide it, and you just say, well, we're going to wait till later, then the parties are going to be forced to go back and spend years litigating this issue, infringement, validity, damages, the whole merits of a patent case, only to come up to this court three years later with this same dispositive legal issue. Am I owned by a big company? That may not be a big deal for them. It's a big deal for DAL to spend that time. And it's a big deal for the district court. If that's your position, why didn't you just waive jurisdiction and get to the meat of the matter? Well, because in some sense, DAL has no problem if this case is simply resolved on the issue of personal jurisdiction. And it is also a dispositive issue. You know that if you resolve it on personal jurisdiction, we should go ahead and resolve the subject matter question. That is not correct, Your Honor. If you affirm on lack of personal jurisdiction, DAL has no interest in whether or not this court reaches that issue of ship has territory. It might be good for the patent bar to finally put to bed this issue that's been out there. It doesn't come up very often. They say it comes up all the time. It actually comes up very infrequently. And when it does, it's usually in the context of criticizing Gardner. Just as an aside, if the district court has already ruled on the subject matter issue, and that's favorable to you. No. No, I'm sorry. The district court ruled against DAL. The district court said that Gardner is the binding law, and it's going to follow Gardner. So another reason there is now, for the first time in 150 years, there actually is another case out there that follows Gardner. It's the district court in this case. And since we're talking about that case, let me just talk about that issue if I could briefly. It comes down to this question of the law of the flag doctrine is ultimately not a statutory construction tool. It is a common law choice of law principle. It comes into play only when the underlying statute, that you're trying to decide what its geographic scope is, when the statute itself doesn't define its own geographic scope. That was the case in Gardner. In 1865, when Gardner was decided, the US patent law had no provision whatsoever specifying what its geographic scope was. That was later changed, first in 1870 and then again in 1952, to add an express geographic scope. And that's just a critical difference here, because every case that's decided whether a ship is a territory, not for choice of law, but for a literal interpreting the words of a statute, every case has come out concluding that it is not a territory, that that metaphor does not apply in the statutory construction context. So let me just address the arguments that they make here. First of all, they make essentially a congressional acquiescence argument. How does the fact that we're dealing with a US flagged ship affect the minimum context analysis? It also is critically important in that context, because we can't just ignore the fact that the forum that they want to point to as being a contact with the United States is something that is different than physical US territory. In this case, the... Why would that matter? It matters because ships move. In this case, a US ship owner itself made the unilateral decision to bring this US flagship down to Brazil for the purpose of itself engaging in Brazilian commerce. So when... Let me ask you this. Let's assume we agree with the district court that US flagships are US territory. And so for purposes of the personal jurisdiction analysis, we have to assume that there was acts of infringement on US territory. We're not going to... I mean, if it's US territory, it's US territory. It doesn't... I don't understand how it matters whether it's a ship or it's an island or something else if it's US territory. It may go to the strengths of the context, but if the context is the acts of infringement are actually occurring on the ship, which is US territory, why isn't that enough to establish personal jurisdiction under K2? We do need to separate the question of whether or not Congress has created a cause of action from the issue of due process. Right. One is statutory, one is constitutional. I'm trying to move on to the personal jurisdiction question. Yeah, no, and that's why... I understand there's a very difficult question of whether this is US territory or not. But if it's US territory, if the ship is US territory, and the act of infringement occurs in US territory, what makes a difference whether it's a ship or Guam or Texas? It's all occurring in the US territory. But again, we still need to apply principles of due process. That's a constitutional requirement. It's separate from... Again, we're assuming for the purpose of hypothetical that Congress extended those laws. But isn't the point of K2 that if there's sufficient contact with the United States as a forum, but there's insufficient contact with any single district that you can get essentially jurisdiction anywhere where there's any kind of minimal contact. I'm not stating it correctly, but K2 is supposed to resolve the problem of whether when there's enough contact with the forum, but there's not contact enough with any specific district court. But it expressly requires that the assertion of jurisdiction comply with principles of due process. It doesn't eliminate that requirement. Sure, but if you're infringing in the United States territory, maybe the confusion here is you're still relying on the district court's notion that you didn't direct this conduct into US territory because of the contract. Put that aside. Assume I don't agree with that at all. Let's just assume you know this is US territory, and you know when you're going on these US flagships that you're infringing. Isn't that sufficient context to obviate any due process concerns? The due process analysis is ultimately a complicated fact-specific analysis. So you can't just look at this one fact in isolation. This is US territory and say, that's the only fact. There are other facts in this case. What are the other facts? First, of course, is the contractual thing that goes to the question of whether or not it was a purposeful availment. But it's also a critical fact that this ship itself has been moved to Brazilian jurisdictional waters. So you've got Brazilian citizens. But I don't care about that, because I assume for purposes of the law that this is a US territory wherever you move it. Maybe I'm not making myself clear. Well, you are. The difference between law and constitution. Let me finish, please. I just don't want to hide what I'm concerned about, which is I don't see this as the complicating factor here is I think we're all struggling with the notion of a ship that can be moved as part of US territory. But if we answer that question in the affirmative and assume it's just like a state or a territory or anything else, issues like this arise all the time where you have two foreign companies that enter into contracts in foreign companies. And most of the activity takes place in foreign countries. But if they commit acts of infringement here in the United States, they're subject to being hauled into a district court under K2 for a patent infringement claim. Again, there are other facts that come into play. And we need to look at the circumstances as a whole. Again, one important distinguishing fact here is that DAL was not there doing business with the US flagged ship. In other words, again, the US flagged ship was unilaterally brought to Brazil. DAL was unilaterally sent to the flagged ships. You don't have to be doing business with the flagged ship. You have to be doing business in the flagged ship territory. Like, for example, it was Arizona. Right, I understand. You weren't doing business with the state of Arizona, but you were in Arizona doing business with a company that required you to come to Arizona. Again, the test as it's been set forth is whether you are purposefully directing activities at the forum. So even if we're willing to interpret the forum here as being the ship, it's still relevant whether or not we're directing activities, for example, specifically at the ship, as opposed to just traveling on the ship. And this is where we're- What about being on the ship and performing the alleged activities that are the alleged infringement? Well, again, consider the hypothetical we put in our brief. A Japanese citizen gets on a ferry in Japan to travel from one island to another island. And in the course of that, they make a phone call on their iPhone. Are they now subject to being sued, having to go all the way to the United States to answer for this infringement? Hey, they used an infringing product on a US flagged ship. I understand your hypothetical, but what about the facts of your case? Well- The situation where your client went onto the ship and performed activities that are being alleged of infringement. But I guess that is my hypothetical, too. When the Japanese citizen uses the phone, it's the same thing. It's use of the invention. And in some sense, our case is actually more compelling, because there were multiple ships at issue here. Look at what happens if you accept their argument. That means that we have a lawsuit here in the United States for infringement of their US patent. We have a lawsuit in Norway for infringement of their Norwegian patent, because there was a Norwegian flagged ship. That happens. What if you were in Norway and you were also in the US? There's multiple patents. But in all those, but in those normal cases, a party has sought out Norway. They've tried to make money from Norway. No, quit saying they've tried to make money from the country. They've tried to make money in the country. So if you try to make money on a Norway flagged ship, you're trying to make money in their territory. If you're trying to make money on a US flagged ship, you're trying to make money in their territory. I don't understand the distinction. I think you have a very good argument that the Patent Act doesn't reach flagged ships as a territory. But if you lose on that, then it seems to matter not one jot to me that this is a ship versus a state versus an island. But then the last argument I want to turn to on that point, Your Honor, is that fair and reasonable problem. Because that's where the Supreme Court has said that, look, there are some times where there will be contacts with the forum. But the remaining circumstances are such that it's simply not fair and reasonable under the specific facts of that case. And if any case can claim to be unusual and compelling, it's this case. There's never been another case, at least that's been cited in the briefs here, where a party has asserted personal jurisdiction based solely on the flag of a ship. So even if you accept that, OK, it's territory and we've got to just put on our blinders, accept the fact, we still need to look at the fair and reasonable factors, as the district court did here, and look at those factors and decide whether or not this is one of those cases where that kicks in and says the defendant is not subject to jurisdiction. Thank you very much. Thank you. You have three minutes. I'd like to begin addressing an administrative point and to judge your initial question. Actually, I think the correct answer is actually the court could not affirm on a 12B6 ground, because as my colleague noted, they did not raise a 12B6 challenge in this case. A different company in the other case raised a 12B6. So if we disagree with you about the reach of the Patent Act, then the remedy is to remand to the district court with an instruction to dismiss for lack of 12B6 instead of doing it for ourselves. It may well be that I wanted to make sure you understood. I mean, frankly, I just wondered if that's the way we're going, eliminate kind of ministerial stuff by the district court. But if they have to do it, they have to do it. Right. And as was noted earlier, the district court's decision was actually decided this was US territory, these vessels were, was in the context of a 12B motion, that kind of motion. I want to address quickly on the US territory bit and then come back to the personal jurisdiction test. They mentioned the 1952 Patent Act. And your question is, Judge Stoll? Yeah. You have a limited time. I'd rather hear from you on the personal jurisdiction stuff. I think you made a good case on your own. Why is it that you think, despite almost everything here occurring in Brazil, you still have personal jurisdiction in Minnesota just because the act of infringement occurred on US territory? Judge Hughes, I would go back to the point that you made, which is this is the reason Rule 4K2 is here. Everyone acknowledges there aren't contacts with the state. There have to be sufficient contacts with the nation. Now, so in other words, if it's within a US territory, as you were noting earlier, it doesn't matter. You're not trying to exploit it. If the US territory qualifies and the patent law applies there, then if you've directed activities into that territory, you should be subject to jurisdiction. Now, we come to the reasonable and fair. Is there any, under the reasonableness, is there any minimum contacts requirement for the particular district court you choose under K2? Or can you just basically go anywhere? My understanding, Your Honor, is you could go to any US district court in terms of personal jurisdiction, because 4K2 allows that with the US forum. On the reasonable and fair analysis, very quickly, as the court is aware, there are five factors. The first one is burden. It was their heavy burden to show that there's a compelling reason why, despite their contacts, there shouldn't be jurisdiction. They did not show that there was actually an undue burden on DAL to litigate. They did not show how many witnesses were going to come, what are all the documents that are going to have to be translated. They just made broad conclusory statements and didn't show that. So they did not show in the record that there is an undue burden. Second, there is, the US has, as this court is well aware, a substantial interest in enforcing US patents and in addressing and remedying injuries on US territory. And that's substantial, regardless of the domiciliaries. We have a US plaintiff and a non-US plaintiff. And third, the plaintiff here, MI, has a strong interest in enforcing US patents, because as we noted in our brief, only US courts can enforce US patents. We can't get a remedy for this in Brazil. A Brazilian court can't give us an injunction of those things. There's no reason to believe that they could. So if we can't come to this court, MI is without a remedy. OK, thank you very much. That concludes today's hearings. This court now stands in recess.